J-A02005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRISTON BUTLER | : | |
| | : | |
| Appellant | : | No. 220 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 16, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No:  CP-02-CR-0000516-2024

BEFORE:  STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY STABILE, J.:                **FILED: July 17, 2026**

Appellant, Triston Butler, appeals from his judgment of sentence of three to six years' imprisonment for carrying firearms without a license and multiple other firearm and drug-related offenses.  Appellant argues that the evidence was insufficient to convict him of two firearms offenses relating to possession of a tan Glock handgun because the Commonwealth failed to prove that he was in constructive possession of this firearm.  Appellant also argues that the trial court graded his offense of evading arrest erroneously.  We affirm Appellant's convictions but vacate his judgment of sentence for evading arrest.

The following evidence was adduced during Appellant's trial:

On October 1, 2023, officer Dalian Feist of the City of Pittsburgh Bureau of Police was on duty in the West End section of the City of Pittsburgh.  At approximately 9:00 p.m. on that date, Officer Feist responded to a call to assist other officers who were attempting to serve an arrest warrant on [Appellant].  Based upon

information received, Officer Feist responded to Cloud King, a retail smoke shop located on Brookline Boulevard. As Officer Feist entered Cloud King, he observed the other officers and one of the other officers yelled [Appellant]'s name. Officer Feist then observed [Appellant] immediately ran toward the rear of the establishment. [Appellant] ran into a door. The door burst open and [Appellant] ran through it. When Officer Feist went through the doorway, he observed [Appellant] lying at the bottom of a staircase. The other officers took control of [Appellant]. Officer Feist then went back into Cloud King to secure the scene. After determining the scene was secure, Officer Feist returned to where [Appellant] had been lying. When he arrived there, he observed [Appellant] resisting arrest. [Appellant] kept attempting to flee while officers were attempting to place [Appellant] in handcuffs. [Appellant] was given several commands to put his hands behind his back but [Appellant] refused to cooperate and tried to conceal his hands by placing them under his body. The officers deployed tasers to subdue [Appellant] and he was eventually taken into custody.

City of Pittsburgh Police Officer Robert Pokora was also dispatched to Cloud King on October 1, 2023. He arrived on the scene shortly after 9:45 p.m. Upon arriving at Cloud King, Officer Pokora encountered Officer Feist who was inside Cloud King securing the scene. Officer Pokora and Officer Feist then exited Cloud King through the rear door, went down the stairs and walked toward the other officers who were attempting to arrest [Appellant]. Officer Pokora observed that the lock to the door had been ripped off the wall. Officer Pokora then assisted the other officers in placing [Appellant] in custody. Officer Pokora then assisted other officers in securing the scene.

After [Appellant] was transported from the scene, Officer Pokora retraced [Appellant]'s steps as he fled Cloud King. Officer Pokora recovered a set of keys from [Appellant]'s vehicle near the rear door area and a cell phone under the steps. Officer Pokora learned that [Appellant]'s vehicle was a black Audi sedan and it was located on the street in front of Cloud King. A search warrant was obtained for the vehicle. During the search of the vehicle, officers recovered two firearms, 68 fentanyl pills and a small amount of marijuana. A [black] Glock 23 .40 caliber pistol and the fentanyl pills were found in a Coach brand shoulder strap bag on the back seat of the vehicle. A [tan] Glock 19X nine millimeter pistol was

recovered from the front passenger floorboard. Both firearms were stolen.

A search warrant was also obtained for [Appellant]'s cell phone. Various photographs were recovered from the cell phone, including photos of [Appellant] wearing the Coach shoulder strap bag on his person. Photos of a hand holding the Glock 23 .40 caliber pistol were media accounts and he created snapshots from one of [Appellant]s' social media accounts depicting [Appellant] holding the Coach bag. These snapshots were also found on [Appellant]'s cell phone. Officer Pokora investigated [Appellant]'s social media accounts and he created snapshots from one of [Appellant]s' social media accounts depicting [Appellant] holding the Coach bag. These snapshots were also admitted into evidence.

The Commonwealth also presented recorded phone calls [Appellant] made to others from the Allegheny County Jail. In those calls, [Appellant] acknowledged that the Coach bag and the cell phone recovered from the scene belonged to him. He also conceded that the black Audi sedan was his vehicle though it was not registered in his name.

Additional evidence was admitted at trial establishing that [Appellant] had previously been convicted of robbery, a felony of the third degree and [Appellant] did not possess a license to carry a firearm. At the time of [Appellant]'s arrest, officers also recovered an additional cell phone and $547 in cash from [Appellant]'s person. Officer Pokora opined that based on his training and experience, drug traffickers often carry multiple cell phones and that the quantity of fentanyl pills recovered from [Appellant] was more than typically recovered from a user of drugs.

Trial Court Opinion, 5/13/25, at 2-4.

Following a non-jury trial, the court found Appellant guilty of two counts of firearms not to be carried without a license and two counts of persons not to possess firearms. For each of these offenses, one count pertained to the tan Glock and one pertained to the black Glock. In the present appeal,

Appellant only challenges his convictions relating to the tan Glock; he does not challenge his convictions relating to the black Glock.

The court also found Appellant guilty of one count of possession with intent to deliver, one count of possession of a controlled substance, one count of resisting arrest, and one count of evading arrest or detention on foot. Appellant does not challenge any of these convictions in this appeal.

Lastly, the court acquitted Appellant of receiving stolen property, flight to avoid apprehension or punishment, possession of marijuana and criminal mischief.

On December 16, 2024, the court sentenced Appellant to concurrent terms of three to six years' imprisonment for the two counts of carrying firearms without a license, one to two years' imprisonment for the two counts of persons not to possess firearms, one to two years' imprisonment for possession with intent to deliver, six months' probation for possession of a controlled substance, one year's probation for resisting arrest, and one year's probation for evading arrest or detention on foot. Appellant filed timely post-sentence motions, which were denied, and a timely appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal, which we re-order for purposes of convenience:

> 1. Whether the evidence was insufficient to convict [Appellant] of one count of Persons Not to Possess Firearms and one count of Carrying Firearms Without a License where the evidence failed to prove, beyond a reasonable doubt, [Appellant]'s possession of the tan Glock in question?

- 4 -

2. Whether the Trial Court imposed an illegal sentence by grading the offense of Evading Arrest or Detention on Foot as a misdemeanor of the second degree, where the Commonwealth failed to offer evidence that the underlying offense for which [Appellant] was being arrested constituted a felony or misdemeanor?

Appellant's Brief at 7.

Appellant contends that the evidence is insufficient to sustain his convictions relating to possession of the tan Glock (one count of persons not to possess firearms and one count of carrying firearms without a license) because the evidence did not demonstrate that he was in possession of the tan Glock. We disagree.

When reviewing a challenge to the sufficiency of the evidence, our standard is

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019).

18 Pa.C.S.A. § 6105, the offense of persons not to possess firearms, prescribes, *inter alia*, that persons are prohibited from possessing firearms if they have been convicted of any offenses enumerated in Section 6105(b). 18 Pa.C.S.A. § 6106, the offense of carrying firearms without a license, prohibits any person from carrying a firearm in any vehicle without a valid and lawfully issued license, subject to various exceptions in the statute. Appellant contends that the evidence is insufficient to sustain his convictions under these statutes because the Commonwealth failed to prove that he possessed the tan Glock found on the front passenger floor of the Audi. We agree with the Commonwealth that the evidence demonstrates Appellant's constructive possession of the tan Glock.

"[P]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018). Since the tan Glock was not discovered on Appellant's person, the Commonwealth must establish that Appellant had constructive possession of the tan Glock. **Commonwealth v. Smith**, 146 A.3d 257, 263 (Pa. Super. 2016).

> Constructive possession
>
> is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

- 6 -

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion or conjecture, will not make out a case of constructive possession.

*Parrish*, 191 A.3d at 36-37. Constructive possession is "an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013).

The trial court reasoned that the evidence showed that Appellant possessed the fentanyl and both firearms:

All of these items were recovered from [Appellant's] black Audi sedan. The [black] Glock 23 .40 caliber pistol and fentanyl were recovered from a Coach shoulder bag that [Appellant] admitted was his during a jail call. Furthermore, [Appellant's] cell phone contained photos of him wearing the Coach bag and [Appellant] posted photos of him wearing the Coach bag on his social media account. This Court believes that this evidence was clearly sufficient to demonstrate that [Appellant] had access to those items and he had the ability and intent to control those items. Additionally, the [tan] Glock 19X nine millimeter pistol was recovered from the front passenger floorboard of [Appellant's] vehicle and the firearm was located directly adjacent to the

- 7 -

driver's seat. This Court believes the evidence was sufficient to establish that [Appellant] possessed that firearm as well.

Trial Court Opinion, 5/13/25, at 7. We agree with the court's determination that Appellant possessed the tan Glock due to the plentiful evidence demonstrating his constructive possession of this firearm.

*First*, multiple strands of evidence show that the Audi belonged to Appellant and that Appellant was operating the Audi on the night of his arrest. One of the officers who arrested Appellant at the smoke shop knew that Appellant drove a black Audi, and the Audi was parked outside of the smoke shop. NT at 39-40. Recordings of Appellant's jail phone calls also show that the black Audi was his. Appellant stated he was paying for insurance on the vehicle. *Id.* at 85. The person to whom Appellant was speaking said that his vehicle had been impounded, to which Appellant responded, "How did they even know that's my car?" *Id.* at 86. The other person replied that police were tracking the license plate. Appellant responded, "How are they tracking that, it's not even under my name?" *Id.* Appellant stated that all of his paint ball gear was "in my trunk." *Id.* at 87. Next, the police recovered a car key on the flight path that Appellant took when he attempted to evade arrest. When Officer Pokora executed the search warrant for the Audi, he placed the key into the ignition. The key turned, but the Audi did not start due to a dead

battery. *Id.* at 90. Counsel for Appellant even conceded that Appellant was likely to be the driver of the Audi whenever he was in the vehicle.[1] *Id.* at 116.

*Second*, it is notable both that Appellant attempted to flee from police apprehension and that the police recovered the key to the Audi on his flight path instead of on his person. These facts indicate that Appellant was aware illegal contraband was inside the Audi and discarded the key in an attempt to prevent the police from entering the vehicle. *See Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008) ("[w]hen a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis [of a conviction] in connection with other proof from which guilt may be inferred"); *Commonwealth v. Newton*, 318 A.3d 133, 141 (Pa. Super. 2024) (where defendant stabbed victim with knife, left scene of stabbing, cleaned off knife, left knife in kitchen sink, and left house, such evidence was admissible to show consciousness of guilt).

*Third*, Appellant admitted that he owned various items found inside the Audi. During the prison phone calls, the individual with whom Appellant was speaking stated, "I'm glad they didn't get your Coach bag", and Appellant

_____

[1] Appellant states in his brief that three individuals were in the smoke shop upon the arrival of police. Appellant's Brief at 30. To the extent Appellant suggests that any of these individuals had some role in the firearm being in the Audi, there is no evidence that supports this suggestion.

responded, "They didn't get it directly." *Id.* at 86. Appellant indicated that all of his paint ball equipment was "in my trunk." *Id.* at 87. Consistent with Appellant's statements, Officer Pokora found a Coach shoulder strap bag on the rear seat of the Audi, *id.* at 42-43, 88-89, and found paint ball equipment in the trunk. *Id.* at 88. Officer Pokora testified that the Coach bag "appear[ed] to be the exact same make of bag" that Appellant was carrying in photos obtained from his cell phone. *Id.* at 108. Inside the Coach bag, Officer Pokora found drugs and the black Glock.

*Fourth*, Officer Pokora located the tan Glock on the passenger side floorboard, *id.* at 43, an area (1) within Appellant's control as the driver of the vehicle, (2) within Appellant's plain view, and (3) mere feet from the Coach bag containing the black Glock and drugs. Furthermore, there is no evidence that any other person was in the Audi at the time when Appellant parked the Audi outside the smoke shop. Nor is there any evidence that another person entered the Audi after Appellant entered the smoke shop. The inference arising from these facts is that Appellant was the only person who had access to the tan Glock.

This evidence, viewed in its totality and construed in the light most favorable to the Commonwealth, shows that the Audi belonged to Appellant, that he stored the tan Glock in the Audi along with other items that he admitted were his, that nobody else had access to the tan Glock, and that Appellant attempted to thwart police from entering the vehicle and finding the

- 10 -

tan Glock. Appellant had both the power to control and the intent to exercise control over the tan Glock. We therefore hold that Appellant had constructive possession of this firearm. **See Hopkins**, 67 A.3d at 821 (defendant was in constructive possession of drugs and firearm found in vehicle he was driving, where officer saw him attempt to hide drugs in space between driver's seat and center console, and firearm was found within arm's length of where he was seated); **Commonwealth v. Kirkland**, 831 A.2d 607, 610 (Pa. Super. 2003) (evidence established defendant's constructive possession of contraband found in vehicle; even though defendant did not own vehicle and arresting officers did not see defendant in vehicle, defendant's wife told officers defendant had arrived in vehicle, defendant possessed keys to vehicle, and contraband was located in plain view on back seat); **Commonwealth v. Brooks**, 2026 WL 370975, *7 (Pa. Super., Feb. 10, 2026)[2] (defendant was in constructive possession of firearm where he was sole occupant of vehicle at time of traffic stop, and firearm was located within his reach underneath driver's seat next to his wallet containing his identification); **Commonwealth v. Rodenizer**, 2025 WL 3442588, *5 (Pa. Super., Dec. 1, 2025) (defendant was in constructive possession of firearm where he was sole owner and operator of vehicle at time of traffic stop, the only person inside vehicle at that time, and the only person with access to firearm at time of traffic stop).

---

[2] **See** Pa.R.A.P. 126 (non-precedential memorandum decisions of this Court filed after May 1, 2019 may be cited for their persuasive value).

Citing **Commonwealth v. Williams**, 2024 WL 3717452 (Pa. Super., Aug. 8, 2024), Appellant claims that he was not in constructive possession of the tan Glock. We disagree. There, a vehicle was stopped for a traffic violation. The defendant was a passenger in the rear seat. There were two other occupants, the driver and a front seat passenger. During an inventory search after the stop, the police discovered a firearm in a fast-food bag on the rear passenger seat. This Court held that this evidence was insufficient to establish the defendant's constructive possession of the firearm. There was no movement in the car prior to the stop, indicating that the defendant was unaware that she was sitting next to contraband. The defendant never admitted to ownership of the bag or its contents. The bag was not located next to the defendant's body but was in the middle of the back seat. The bag was situated so that the defendant would not have seen the contents of the bag unless she could have looked directly down inside the bag. No indicia relating to Appellant was found in the bag. Moreover, the bag was located directly behind the front seat passenger, who had a firearm on him at the time of the stop. The weapon in the bag and the weapon on the front seat passenger were both "ghost guns" with the same caliber. Under these circumstances, we held that there was no evidence that the defendant knew of the weapon in the bag or intended to exercise dominion and control over the items in the bag.

Unlike the defendant in **Williams**, Appellant knew of and exercised control over the tan Glock, since it was in a vehicle that belonged to him and was in plain view near items that he admitted were his. Furthermore, while the defendant in **Williams** was with other individuals, one of whom possessed a firearm similar to the firearm in the bag, the evidence herein indicates that Appellant was the sole occupant of the Audi. Thus, we find Appellant's reliance on **Williams** unpersuasive.

For these reasons, Appellant's challenge to the sufficiency of the evidence fails.

In his second argument, Appellant contends that the trial court erroneously graded his conviction for evading arrest. The trial court and the Commonwealth agree with this argument, and we do as well.

The Crimes Code defines the offense of evading arrest as follows:

(a) Offense defined.--A person commits an offense if the person knowingly and intentionally flees on foot from a public servant attempting to lawfully arrest or detain that person.

(b) Grading.--An offense under this section is:

(1) A felony of the third degree if a person flees or attempts to evade arrest or detention for an underlying offense that constitutes a felony or misdemeanor and another person suffers serious bodily injury as a direct result of a violation of this section.

(2) A felony of the second degree if a person flees or attempts to evade arrest or detention for an underlying offense that constitutes a felony or misdemeanor and another person suffers death as a direct result of a violation of this section.

(3) Except as provided under paragraph (1) or (2), a misdemeanor of the second degree if a person flees or attempts

- 13 -

to evade arrest or detention for an underlying offense that constitutes a felony or misdemeanor.

(4) Except as provided under paragraph (1), (2) or (3), a summary offense.

18 Pa.C.S.A. § 5104.2.

At sentencing, the trial court graded Appellant's offense under Section 5104.2 as a second-degree misdemeanor. The court later conceded in its opinion that it should have graded this offense as a summary offense.

This concession is correct. The police encountered Appellant at the smoke shop and pursued him to execute an arrest warrant. NT at 14-15, 35. The Commonwealth, however, failed to identify the offense for which the arrest warrant had been issued. The trial transcript merely stated:

Prosecutor: And without telling the court what that warrant was for, was that an arrest warrant?

Officer Pokora: Yes, it was.

*Id.* at 72. Stated in terms of the statute, the Commonwealth failed to identify the "underlying offense" for which Appellant was fleeing or attempting to evade arrest or detention. 18 Pa.C.S.A. § 5104.2(b)(1), (2), (3). The contraband found in Appellant's Audi was not an "underlying" offense, because the police did not discover these items until after Appellant's arrest. Thus, the court could not grade the offense of evading arrest higher than a summary offense. 18 Pa.C.S.A. 5104.2(b).

By improperly grading this offense, the court imposed an illegal sentence. ***Commonwealth v. Dourlain***, 315 A.3d 868, 872 (Pa. Super.

2024) ("[a] claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence").  We thus vacate Appellant's sentence for this offense.  Despite vacating this sentence, we need not remand for resentencing.  The court imposed concurrent one-year sentences of probation for evading arrest and resisting arrest, so vacating one of them does not upset the sentencing scheme.  *See Commonwealth v. Scarcelli*, 327 A.3d 650, 658 (Pa. Super. 2024) ("because our disposition does not upset the trial court's overall sentencing scheme or affect Appellant's aggregate sentence . . . it is unnecessary to remand for resentencing").

Convictions affirmed.  Judgment of sentence for evading arrested vacated.  Judgment of sentence affirmed in all other respects.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/17/2026